JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 02264

----------------------------------------X
James H. Brady,

                      *Plaintiff*,    **CIVIL ACTION**

     v.

New York State Commission on Judicial
Conduct; New York County District
Attorney Cyrus R. Vance; New York
State Attorney General Eric Schneiderman;
New York Governor Andrew Cuomo.

                      *Defendants*.
----------------------------------------X

## INTRODUCTION

1.     This is a Civil Rights complaint alleging violations of due process for the deprivation of property rights under color of law, conspiracy to deprive *pro se* plaintiff of his property rights, and for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, violations of 42 U.S.C. §1983(1) & (2) and 18 U.S.C. §241. The complaint further alleges intentional infliction of emotion distress, gross negligence and *prima facie* tort.

2.     The Defendants engaged in obstructing justice and were accomplices in a conspiracy that seized $100 million worth of air rights that were expressly and exclusively conveyed to and reserved for the utilization of my apartment in a commercial co-op through the Seventh Paragraph Footnote to the Schedule of Units found in the Amended Offering Plan for 450 West 31st Street Owners Corp., which is located in the Hudson Yards District of Manhattan.

3.     Once the state judges deliberately disregarded the clear meaning and intent of the Footnote to the Schedule of Units and rewrote the description of my apartment for the benefit of

the other co-op shareholders, powerful New York real estate developers, and title insurance companies, the issue moved from a civil to also a criminal matter.

4. The Seventh Paragraph Footnote to the Schedule of Units reads as follows:

> "[Seventh Paragraph – New] The 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law."

5. This modification was made in the second and final amendment to the 1980 Offering Plan, and all people wishing to become shareholders were required to sign a contract agreeing to be bound by this provision.

6. The documentary evidence in this Complaint proves that for years I pleaded with Defendants to perform their duty and take appropriate action in the face of blatant corruption by the New York State judiciary who repeatedly and blatantly rewrote the description of my apartment after I refused Justice Friedman's May 6, 2008 threat I waive my rights for the $500,000 offered by the co-op corporation.

7. All Defendants refused to take any action whatsoever, though an investigation proving corruption could have been performed simply by requiring the judges to: 1) explain why the contract does not mean what it says on its face, and 2) requiring the Justices to explain by what line of reasoning or legal authority they used to feel entitled to rewrite the description of my apartment from the way it was promised in the Amended Offering Plan.

8. Black's Law Dictionary defines "Corruption" as:

Illegality; a vicious and fraudulent intention to evade the prohibitions of the law. The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others. *U. S. v. Johnson* (C. C.) 20 Fed. 082; State v. Ragsdale. 59 Mo. App. 003; *Wight v. Rindskopf*, 43 Wis. 351; *Worsham v. Murchison*, 00 Ga. 719; *U. S. v. Edwards* (C. C.) 43 Fed. 07.

2

9. Based on this definition, Defendants were certainly corrupt and acted with depraved indifference in allowing the state's judges to disregard what the contract says on its face, and to repeatedly permit the Justices to rewrite my contract with false interpretations of the paragraph for the benefit of the co-op corporation, powerful New York real estate developers, and the insurance companies that would be liable for damages by insuring title in a transaction without a waiver of my rights.

10. Defendants' role was to obstruct justice by each doing nothing and refuse to admit seeing obvious and overwhelming evidence that the State's judges were being corrupt by refusing to admit the clear meaning and intent of the contract, and blatantly and repeatedly rewriting the contract description of the rights given to my apartment with the criminal intent to void the $100 million of air rights that were appurtenant to my apartment.

11. A tactic used by some of the Defendants was to instruct me to go to the Commission on Judicial Conduct, where they know complaints go to be killed by fellow judges, and practicing New York state lawyers who have nothing to gain by admitting they see corruption, and everything to gain by pretending that they see no judicial wrongdoing.

12. Defendants know the Commission has no transparency, conducts their affairs entirely in private, and systematically dismisses almost every complaint against a New York State judge. The Commission refused to ever speak to me or address the two simple questions that I demanded they ask these judges, which would have proven the corruption of the states' Justices. Instead sent me form-letters saying they saw no judicial wrongdoing. Defendants' refusal to ask these questions is evidence of their own corruption.

13. It is impossible that the judges believed that the intent of the Footnote was not to convey air rights to my Unit when on its face that is precisely what was being given. The judges were given these definitions of air rights:

> "The rights to develop further the heretofore unused space above a building or other structure." The American Heritage College Dictionary (3rd Ed. 1993) "
>
> "The right to use all or a portion of airspace above real property." Black's Law Dictionary (5th Ed. 1979)"

14. The dictionary definitions of air rights is precisely what is being described as conveyed and reserved for the exclusive use of my apartment pursuant to the Seventh Paragraph Footnote found in the "Description of Property" of the Offering Plan. Only through corruption could someone claim otherwise.

15. Certainly attorney-Defendants would have admitted seeing the corruption, the clear violations and abuse of powers, had they or their family or friends been the ones defrauded by the state courts. This fact proves that Defendants have obstructed justice and deprived me of equal protection before the law.

16. Defendants were instrumental in defrauding me of my rights under the Offering Plan, and violating my constitutional rights to due process and equal protection before the law. Because of the Defendants actions and omissions, I have now been left to pay $400,000 in attorneys' fees and sanctions to the people that seized my rights and tortiously interfered with my Offering Plan contract.

## PARTIES

17. The New York Commission on Judicial Conduct ("CJC") is body designated to investigate judicial conduct in the New York State Court System. The Commission's principal office is located at 61 Broadway, Suite 1200, New York, NY 10006.

18. The New York County District Attorney is Cyrus R. Vance. The District Attorney's Office Public Integrity Unit investigates and prosecutes all types of crimes committed by public employees, judges, elected officials, candidates for public office, and all those who hold public trust positions. The New York County District Attorney's Office is located at One Hogan Place, New York, NY 10013.

19. The New York State Attorney General is Eric Schneiderman, located at Office of the Attorney General, The Capitol, Albany, NY 12224-0341.

20. Governor Andrew Cuomo's Office is located at NYS State Capitol Building Albany, NY 12224.

21. At all relevant times, Defendants have acted or failed to act, as alleged herein, under color of state law.

## JURISDICTION AND VENUE

22. The Court has jurisdiction over this action pursuant to the federal question arising out of the Fourteenth Amendment's Equal Protection Clause and under 28 U.S.C. §1983 as a civil action for deprivation of rights. The federal court has jurisdiction over civil rights complaints pursuant to 28 U.S.C. §1343 (a)(3). As a *pro se* petitioner, I ask the court to construe this pleading liberally when establishing whether it has met the federal requirement of the well-pleaded rule. *Hall v. Bellmon*, 935 F.2d. 1106 (1991).

23. This court has supplemental jurisdiction over any claims that may be raised based on state law under 28 U.S.C. §1367, which provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United

5

States Constitution," subject to the "common nucleus of operative facts" established in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

24. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(a) because Defendants and Plaintiff are located in this District, and the events, actions or omissions giving rise to the claims herein occurred in the Southern District of New York, and Defendants are subject to personal jurisdiction in this District at the time this action is commenced.

## STATEMENT OF FACTS

### I.  Background

25. The following statement of facts was presented to all Defendants and forms the basis for my claims.

26. As Defendants were repeatedly told, I am a shareholder in a commercial co-op who owns the block of shares that give me the right to have the "12th Floor and Roof Unit" as it is described in the Seventh Paragraph Footnote to the Schedule of Units of the Amended Offering Plan.

27. The Seventh Paragraph Footnote reads as follows:

> "[Seventh Paragraph – New] The 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law." (Exhibit A).

28. In the Offering Plan, it is shown that the sponsor, Arthur Green, measured the building and lot down to the square foot, and according to the Offering Plan the building is 104,000 s/f. Thus, according to the express terms of the Amended Offering Plan, the 12th Floor and Roof Unit, which the sponsor disclosed he was keeping for himself, was given the express and

exclusive right to utilize any permissible development rights "that may from time to time be permitted" above the 104,000 s/f utilized by the current structure.

29. As the last page of the Second Amendment shows, the addition of the Seventh Paragraph Footnote was a final term added by the sponsor, and all people wishing to become shareholders were required to be bound by this provision.

30. In 2005, "applicable law" changed for the first time since the Offering Plan was declared effective through the creation of the Hudson Yards District. Suddenly the Co-op was able to construct or extend approximately 190,000 s/f of additional structures on its parcel of land.

31. Pursuant to the Seventh Paragraph Footnote, those rights were to be conveyed to and reserved for my apartment's exclusive use. Back in 2006, the Co-op had these rights appraised at $44 million. Since that time, air rights such as these which are along the High Line Park have more than doubled in value.

32. Extell Development Corp. wanted to purchase and utilize these new development rights to construct a larger structure on its abutting parcels of land, which it amassed after the 2005 rezoning. In 2007 Extell went under contract with the Co-op Board for $11.5 million to enter into a zoning lot merger transaction, where the co-op would shift approximately 170,000 s/f of its newly created air rights over Extell's lot. This was a clear violation of the Offering Plan contract, yet the Co-op and its attorneys tried selling the rights without disclosing the fact that the sale would violate my rights, and without seeking the waiver that they knew they needed in order to have the legal right to transfer these rights.

33. Weeks before the November 2007 closing, I discovered that the Co-op Board and their attorneys were attempting to seize the rights appurtenant to my unit without seeking a

waiver from me. Rather than stop their corrupt actions, they doubled-down by providing me with false assurance that the sale would not affect my Unit's rights, and said they would not let me see the contract until after the transaction closed.

34. Knowing that the Co-op Board and its attorneys were lying, I went to the New York Supreme Court to have my rights protected. Rather than find protection in the New York State Court System, I found myself facing corrupt Justices who repeatedly rewrote my contract, and surrounded the Seventh Paragraph contract provision with their own terms and conditions after I refused Supreme Court Justice Marcy Friedman's May 6, 2008 threat to waive my rights for the $500,000 offered by the Co-op Corporation. Justice Friedman had no concern that this offer to waive my rights was $2 million less than what Extell Development Corp. offered me to waive my rights one month earlier in April 2008, and then withdrew at the start of the court-ordered settlement talks once they realized they had an ally in Justice Friedman.

### A. On July 2, 2008, Justice Friedman was warned that "No authority, whether statutory or precedential, allows a court to ignore or overrule clear and unambiguous terms in an offering plan."

35. On July 1, 2008, Justice Friedman held a phone conference with my attorney and the attorneys for Extell and the Co-op during which she effectively said she was going to rewrite the description of my apartment for the benefit of the co-op corporation and the powerful real estate developer, Extell Development Corp.

36. In response to this flagrantly unlawful action, my attorney at the time, Margaret Dale of Proskeur Rose, wrote Justice Friedman on July 2, 2008 urging her not to abuse her power and act unlawfully:

> No authority, whether statutory or precedential, allows a court to ignore or overrule clear and unambiguous terms in an offering plan. In this case, the Court cannot ignore that the new 7th paragraph of the Second Amendment further

8

describes what is included as part of the 12th Floor and Roof Unit. The Court cannot ignore that all of the rights to the space above the Building's roof belong to, and is part of, the 12th Floor and Roof Unit. The rights to all of the space above the Building's roof has been conveyed to the 12th Floor and Roof Unit **to the extent that is "permitted by applicable law"** – not just the 25,000 square feet that the Defendant Cooperative Corp. reserved for itself. Such language was inserted into the Offering Plan for a reason, and none of the Defendants presents any alternative meaning to the plain language. No authority, whether statutory or precedential, allows a co-op to seize part of a shareholder's unit without consent. **No authority, whether statutory or precedential, allows a court to completely disregard multiple experts' undisputed testimony that states that the proposed sale to Extell violates and destroys Plaintiff's rights.**

### B. That Very Day, Justice Friedman Unlawfully Rewrote the Description of my Apartment with No Concern That Anyone Would Discipline Her or Reverse the False Decision She Said She was Going to Make

37. Justice Friedman states in the July 18, 2008 decision that: "The threshold issue on these motions is therefore whether this paragraph should be construed as conferring air rights upon plaintiffs."

38. Notwithstanding the absence of any legal authority or rationale, Justice Friedman on July 2, 2008 issued the first Supreme Court decision rewriting my contract:

> "the court finds that paragraph 7 is not ambiguous, and that it gives plaintiffs the right to build structures on or above the roof but does not convey air rights to plaintiffs."

39. The only way Justice Friedman could come to this conclusion was to disregard my undisputed expert testimony and replace the words "to the extent that may from time to time be permitted under applicable law," with the words "_BUT_ does not convey air rights to plaintiffs" in a contract she had just ruled unambiguous.

40. Justice Friedman's corruption did nothing but create an internal inconsistency in the decision since the right to construct or extend structures on or above the roof is the exact

9

definition of air rights, which the court acknowledged I had when the court stated that "it gives plaintiffs the right to build structures on or above the roof," which is the definition of air rights.

41. The only thing Extell could do with the court's July 2, 2008 decision was use it to prove that the Co-op was in breach of contract for not disclosing that the premise's air rights had already been conveyed to and reserved for the exclusive use of the 12th Floor and Roof Unit. Extell subsequently got its deposit back from the Co-op and walked away from the deal.

### C. A reargument motion was made in November 2008 in which I demanded that Justice Friedman follow the law and not rewrite the description of my apartment from the way it was promised and described in the Amended Offering Plan

42. At this point in time, Justice Friedman was well aware that her previous illogical and internally inconsistent decision made no sense and was rejected by Extell Development Corp. and its title insurance company, Commonwealth Title. Thus, at that point, the only party who could have benefited from Justice Friedman's continued corruption would be the co-op corporation.

43. Rather than being just, Justice Friedman continued to be corrupt, this time by trying a different method: she left the Seventh Paragraph Footnote intact – *BUT* she added an entire "provision" to the end of contract, in a second attempt to void the rights given to my apartment.

44. On March 13, 2009, Justice Friedman put all her judicial powers into an ORDERED, ADJUDGDE and DECLARATION, which she knew was a false interpretation of her understanding of the rights given to my Unit:

> "pursuant to paragraph 7, plaintiffs, have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be given under applicable law. *Provided that*: Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension."

10